UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

PIZZERIA UNO CORPORATION,                )
    Plaintiff,                                          )
                                            )

v.                                                               )                Civil Action No. 24-CV-12925
                                            )

TRPRAPJMP, LLC,                              )
TED POLITTE, and                             )
JOAN POLITTE,                                   )
    Defendants.                                      )
_____)

## COMPLAINT AND JURY DEMAND

Plaintiff, Pizzeria Uno Corporation ("Uno"), hereby requests a jury trial and asserts the following claims against Defendants, TRPRAPJMP, LLC, Ted Politte, and Joan Politte:

### INTRODUCTION

Defendants, who are the franchisee and principals to a franchise agreement with Uno, breached the agreement when they failed to pay Royalty Fees and other amounts owed to Uno under that agreement. In 2003, Uno and Defendants entered into a franchisee agreement which granted franchisee the right to operate an Uno restaurant in Denver, Colorado in consideration for franchisee paying royalty and other fees to Uno. Defendant principals were personal guarantors of the franchise agreement. The franchise agreement explicitly required franchisee to pay Uno monthly fees for the 20-year term of the franchise agreement. Franchisee paid Uno the fees owed through authorized electronic fund transfer ("EFT") withdrawals from franchisee's designated bank in amounts invoiced by Uno. When certain monthly EFT withdrawals were mistakenly not pulled in 2020, 2021, 2022 and 2023, franchisee refused to pay these fees even though they had been billed and there was no dispute that they were due and owing. Moreover, when Uno demanded payment, franchisee wrongfully closed its bank account to cut off Uno's access to the

1

account designated for EFT withdrawals and stopped making payments on a payment plan franchisee had agreed to for past missed EFT withdrawals.  In November 2023 franchisee closed the Denver restaurant before the end of term of the franchise agreement.  Franchisee continues to refuse to pay past due Royalty Fees from missed EFT withdrawals.  Total unpaid fees due to Uno total over eighty thousand dollars ($80,000.00), plus interest.  Defendants' conduct amounts to breach of contract and conversion of monies entitling Uno to damages, attorneys' fees, and other relief.

## PARTIES

1.      Plaintiff, Pizzeria Uno Corporation ("Uno" or "Plaintiff") is a Delaware corporation with a principal place of business at 44 Industrial Way, Norwood, Massachusetts 02062.

2.      Defendant, TRPRAPJMP, LLC, is a Nevada limited liability company with its principal place of business at 186 Poco Calle Way, Golden, Colorado, 80401.

3.      Defendant, Ted Politte, is an individual, who resides at 14234 W Exposition Drive, Lakewood, Colorado, 80228.

4.      Defendant, Joan Politte, is an individual who resides at 186 Poco Calle Way, Golden, Colorado, 80401.

## JURISDICTION/VENUE

5.      Defendants contracted to transact business with Plaintiff who is headquartered in Massachusetts, and in the terms of that contract, Defendants consented to jurisdiction in the state and federal courts located in Massachusetts.

6.      As such, this Court has personal jurisdiction over Defendants.

2

7.     This Court has original subject matter jurisdiction over this suit pursuant to 28 U.S.C. §1332 because it is a dispute between citizens of different states and the amount in controversy exceeds $75,000.

FACTS

8.     Uno is in the highly competitive casual dining restaurant business.

9.     Uno owns and operates a chain of casual dining restaurants in multiple states across the country as well as in several countries including Qatoar, India and Saudi Arabia.

10.     Uno operates Pizzeria Uno restaurants, which offer customers its signature Chicago style deep dish pizza, as well as bar food, sandwiches, burgers, and pasta.

11.     Ike Sewell founded Pizzeria Uno eighty years ago in 1943 on the corner of Ohio and Wabash Streets in Chicago, Illinois, when he served a pizza unlike any other that had been previously served. He made a buttery crust with a tall edge like a fruit pie with a recipe including Italian spices and quality tomatoes, and he helped create the definitive "deep dish" pizza that has been associated with Chicago for decades.

12.     Aaron Spencer purchased Pizzeria Uno in the 1970's and grew the brand through franchising and expansion of corporate restaurants, and he brought the corporate offices to Massachusetts where they remain today.

13.     While the UNO corporate structure has evolved over the years, the Pizzeria UNO culture and service has remained consistent to the original recipes, both in the food and in the culture of high quality and service.

14.     Uno operates some of its chain of casual dining restaurants through franchisee agreements with third-parties.

*The Franchise Agreement between Uno and Defendants*

15.     In or around May 3, 2005, Uno entered into a franchise agreement ("Agreement") with Defendant, TRPRAPJMP, LLC ("Franchisee").

16.     According to the terms of the Agreement, Uno granted Franchisee the right and license to operate a full-service Uno restaurant at 16375 East 40th Avenue, Denver, Colorado, 80011 ("Denver Restaurant").

17.     The term of the Agreement was twenty (20) years (the "Term").

*Royalty Fees and Other Fees*

18.     In consideration for the right to operate the Denver Restaurant, the Agreement required Franchisee to pay Uno a non-refundable initial franchisee fee of thirty-five thousand dollars ($35,000.00).

19.     Franchisee was also obligated to pay Uno royalty fees for the Term of the Agreement.

20.     The Agreement required Franchisee to pay Uno a monthly royalty fee in an amount equal to *the greater of* five percent (5%) of franchisee's gross sales or four thousand ($4,000) for the Term of the Agreement.

21.     The Agreement states, in relevant part:

4.2     **ROYALTY FEES**
The Franchisee will, from the Opening Date through the end of the Term, pay the Franchisor or its designee a royalty fee (the "Royalty Fee"), equal to the percentage of the Franchisee's Gross Sales (as defined in Article 26.9) or monthly amount set forth in the Article 4.2.  The Royalty Fee payable by the Franchisee pursuant to this Agreement will be payable to the Franchisor on the fifteenth (15th) day of each month for the preceding month's Gross Sales….

(a)     Standard Royalty Rate.  Except as Article 4.2(b) or Article

4

4.2(c) may apply, the Franchisee will, from the Opening Date through the end of the Term, pay the Franchisor a Royalty Fee equal to the greater of five percent (5%) of the Franchisee's Gross Sales or four thousand dollars ($4,000) per month.

22.     According to the express terms of the Agreement, a payment of any fee, including any Royalty Fee, was considered past due if received by Uno after the date due under the Agreement, which for Royalty Fees was the fifteenth (15th) day of the month.

23.     The Agreement also specifically prohibited Franchisee from withholding any payment due under the Agreement or from setting off any amounts owed by Uno against any payments due by Uno as franchisor.

24.     The Agreement provided that Uno was entitled to simple interest on any past due amounts owed by Franchisee.

25.     The Agreement states, in relevant part:

**4.3     <u>PAYMENTS; INTEREST</u>**
The Franchisee will not have the right to withhold any Payment due the Franchisor under this Agreement for any reason whatsoever, nor will the Franchisee have the right to set off any amounts owed for allegedly owed by the Franchisor to the Franchisee against any payments…Any Payment not received by the Franchisor on or before the due date will be deemed past due.  All past due Payments of the Franchisee will bear simple interest from the due date until the Payment is received by the Franchisor at the frate of one and one-half percent (1 ½ %) per month on the unpaid balance, or the maximum rate allowed by applicable law, whichever is less.

***Principals Personal Guarantee of Payments under the Franchise Agreement***

26.     Defendant Ted Politte ("Ted P.") served as the Operating Partner and President of Franchisee, and Defendant Joan Politte ("Joan P.") served as its Secretary.

27.     Ted P. and Joan P. were each listed as and signed the Agreement as Principals of Franchisee.

28.     Each of Ted P. and Joan P. agreed to personally guarantee any and all fees, payments and other amounts owed by Franchisee under the Agreement, and explicitly agreed to make payment if the Franchisee agreed to do so.

29.     Ted P. and Joan P. furthermore signed a personal guaranty of the Agreement in their role as Principals.

30.     The Personal Guaranty of the principals, states in relevant part:

In consideration of the execution of the foregoing Franchise Agreement by Pizzeria Uno, each of the undersigned acknowledges and agrees as follows:

Each of the undersigned individually, jointly and severally, makes all of the covenants, representations, warranties and agreements of the principals set forth in the Franchise Agreement and is obligated to perform thereunder…

Each of the undersigned individually, jointly and severally, unconditionally an irrevocably guarantees to the Franchisor and its successors and assigns that all of the obligations of the Franchisee under the Franchise Agreement will be punctually paid and performed;

Upon default by the Franchisee or notice from the Franchisor, the undersigned will immediately make each payment and perform such obligation required of the Franchisee under the Franchise Agreement.

### *Franchisee Payment of Fees through EFT Withdrawal*

31.     The Agreement explicitly permitted Uno to, at its option, require payments of Royalty Fees or any other amounts owed by Franchisee under the Agreement, to be made electronically through EFT withdrawals from a bank account designated by Franchisee.

32.     Franchisee was required to execute all documents and required to authorize Uno to make such EFT withdrawals for the payment of any and all Royalty Fees or other fees owed under the Agreement

33.    Franchisee was also required to maintain a minimum balance in the account designated for EFT withdrawals by Uno for payments under the Agreement, including Royalty Fees.

34.    According to the express terms of the Agreement, it constituted a material default for Franchisee to close any account designated by for EFT payment withdrawals, without Uno's consent.

35.    The Agreement states, in relevant part:

**4.4    ELECTRONIC WITHDRAWAL**
If at any time during the Term the Franchisee becomes delinquent in any Payment for more than thirty (30) days on two (2) separate occasions during any twelve (12) month period, the Franchisor will have the option to require the Franchisee to make all Payments by EFT.  If EFT is implemented, the Franchisor will withdraw funds from the Franchisee's designated bank account each month by EFT in the amount of the Payments then due to the Franchisor.   EFT withdrawals will be made by the Franchisor on the fifteenth (15th) day of each month for the amount of the Royalty Fee payable for the preceding month based on the Franchisee's Monthly Sales Report...The Franchisee will sign Exhibit E or such other form of EFT authorization and other documents as may be required by the Franchisor or its bank to authorize and process the EFT withdrawals from the Franchisee's bank account for all Payments due under this Agreement…The Franchisee will, at all times during the Term, maintain a minimum balance of ten thousand dollars ($10,000) in the Franchisee's bank account against which all EFTs will be made.  It will be a material default if the Franchisee closes the designated bank account without the Franchisor's consent and fails to establish another account and execute all documents necessary for the Franchisor to process EFT payments for the new designated account.

36.    During the term of the Agreement, Uno exercised its right under the Agreement, to require Franchisee to make payments of Royalty Fees and monies owed by Franchisee to Uno by EFT withdrawal.

37.    As specifically permitted by the Agreement, it was the business practice of Uno and Franchisee for Uno to send Franchisee a monthly invoice which itemized the Royalty Fees and any other amounts which Franchisee owed Uno, and then have its payment processing vendor

withdrawal by EFT from Franchisee's designated account, the amounts set forth in the invoice for transfer to Uno's bank account.

***Unpaid Past Fees Fanchisee Owes Uno***

*Fees from 2020 and 2021*

38.     For a period of several months in 2020 and 2021, Franchisee failed to fulfill its payment obligations to Uno under the Agreement.

39.     During the months of February 2020, June through December 2020, January 2021 and March through July 2021, Uno invoiced Franchisee the Royalty Fees, Co-Op Fees and other amounts owed for these months.

40.     Uno billed Franchisee for these Royalty Fees and Co-Op Fees when they were due and requested that Franchisee make payment.

41.     However, Uno's vendor inadvertently failed at the time to withdraw by EFT from Franchisee's designated account, the amounts set forth in these invoices for transfer to Uno's bank account.

42.     Uno not only billed Franchisee for these Royalty Fees and Co-Op Fees when they were due, but Uno also repeatedly asked Franchisee for payment of these amounts due when they realized the Uno's vendor had not completed the EFT withdrawal.

43.     Franchisee refused to pay these Royalty Fees and Co-Op Fees due under the Agreement and invoiced by Uno to Franchisee.

44.     As a result, during several months in 2020 and 2021, Franchisee failed to pay Uno Royalty Fees and Co-Op Fees due under the Agreement.

45.     Franchisee continues to refuse to pay Uno the 2020 and 2021 Royalty Fees and Co-Op Fees, without any basis or justification.

8

46.     Through EFT withdrawal, Franchisee made payment of the Royalty Fees, Co-Op Fees and other amounts owed under the Agreement and billed during the other months of 2020 and 2021.

47.     Uno's acceptance of payment by Franchisee did not waive the right of Uno to pursue remedies for any preceding breach by Franchisee associated with such payment.

48.     According to the Agreement, the failure of or delay by Uno to exercise any right arising out of any breach or default by Franchisee is not a waiver of the right of Uno to enforce such right, option or obligation going forward in the future.

49.     The Agreements states, in relevant part:

**17.3   <u>NO WAIVER</u>**
No Delay, waiver, omission or forbearance on the part of the Franchisor to exercise any right, option, duty or power arising out of any breach or default by the Franchisee or the Principals under this Agreement will constitute a waiver by the Franchisor to enforce any such right, option, duty or power against the Franchisee or its Principals, or as to a subsequent breach or default by the Fnrachisee or the Principals.  The Franchisor's acceptance of any Payments due to it hereunder subsequent to the time at which such Payments are due will not be deemed to be a waiver by the Franchisor of any preceding breach by the Franchisee or the Principals of any terms, provisions, covenants or conditions of this Agreement.

50.     Franchisee continues to fail to perform its payment obligations under the Agreement refusing to make payment refusing to Uno of multiple months of delinquent Royalty Fees and Co-Op Fees that were due, owing and invoiced in 2020 and 2021

51.     Franchisee has never made payment to Uno of multiple months of delinquent Royalty Fees and Co-Op Fees that were due in 2020 and 2021.

52.     These unpaid fees from 2020 and 2021 total over eighty thousand dollars ($80,000).

*Fees from 2022 and 2023:*

53.     For a period of several months in 2022 and 2023, Franchisee again failed to pay Uno Royalty Fees and Co-Op Fees owed under the Agreement.

54.     Uno billed Franchisee for these Royalty Fees and Co-Op Fees when they were due and requested that Franchisee make payment.

55.     During multiple months in 2022 and 2023, Uno invoiced Franchisee the Royalty Fees, Co-Op Fees and other amounts owed for these months.

56.     Just as it happened in 2020 and 2021, Uno's vendor inadvertently failed at the time to withdrawal by EFT from Franchisee's designated account, the amounts set forth in these 2022 and 2023 invoices for transfer to Uno's bank account.

57.     When Uno realized that its vendor again had not completed the EFT withdrawal from Franchisee's designated account for amounts invoiced, Uno again requested that Franchisee pay these delinquent fees from 2022 and 2023.

58.     This time, Franchisee agreed to pay Uno these paid due, delinquent amounts.

59.     Franchisee and Uno agreed to a payment plan for Franchisee to pay Uno the 2022 and 2023 delinquent fees over time.

60.     In January 2024, when Uno gave Franchisee its regular notice of the monthly amounts to be withdrawn by EFT from Franchisee's designated account for the February and March 2023 Royalty Fees, Franchisee objected without basis and closed the account, in breach of the Agreement.

61.     Uno was deprived of its ability to retrieve via ETF withdrawal payment for these 2023 Royalty Fees as well the other 2020 and 2021 delinquent fees in breach of the Agreement and in violation of Franchisee's express promise to pay this amount back under a payment plan.

62.     Uno asked Franchisee again to make payment on these delinquent amounts.

63.     Franchisee still refused to pay these Royalty Fees and Co-Op Fees due under the Agreement and invoiced by Uno to Franchisee.

64.     Franchisee has not made payment to Uno of delinquent Royalty Fees and Co-Op Fees that were due in February and March 2023.

65.     These unpaid fees from February and March 2023 total over ten thousand dollars ($10,000).

66.     In November 2023, Franchisee ceased operations and closed the Denver Restaurant.

67.     Uno has repeatedly asked Franchisee for the unpaid portion of the November 2023 Royalty Fees, but Franchisee has not made any payment to Uno of these delinquent amounts.

***Uno's Available Remedies***

68.     The failure to comply with or the breach of any of term of the Agreement, including the failure or refusal of Franchisee to make prompt payment of any Royalty Fee or other amounts owed Uno under the Agreement, constitutes a material default of the Agreement.

69.     Franchisee's failure to pay past unpaid Royalty Fees and Co-Op Fees from 2020 and 2021 and from February and March 2023, and the failure to pay Uno the unpaid portion of the November 2023 Royalty Fees and Co-Op Fees, constitute events of default and material breaches of the Agreement.

70.     The Agreement states, in relevant part:

**19.3    EVENTS OF DEFAULT; TERMINATION ON NOTICE**
The Franchisee will be in material default of this Agreement, and the Franchisor will have the absolute right to terminate this Agreement subject only to any opportunity to cure the default provided below, by given written notice to the Franchisee, upon occurrence of any of the following Events of Default: (a) Franchisee fails, refuses or neglects promptly to pay any monies

11

owing the Franchisor…when due under this Agreement…(f) the Franchisee at any time ceases to operate or otherwise abandons the Restaurant…(m) the Franchisee fails or reuses to comply with any terms and conditions of any agreement between the Franchisor and the Franchisee and does not cure such default within any required cure period; or (n) the Franchisee fails in any respect to comply with any material term, condition or covenant of, or breaches any representation or warranty contained in this Agreement.

71.     Uno was required under the Agreement to provide Franchisee written notice of any

breach or event(s) of default and give Franchisee time to cure.

72.     When the event of default concerns delinquent or non-payment of any fees or other

monies payable to Uno under the Agreement, Franchisee has ten (10) days to cure the default.

73.     The Agreement states, in relevant part:

**19.4    NOTICE OF BREACH; OPPORTUNITY TO CURE**
Except as provided for in Article 19.2 of this Agreement, the Franchisor will not have the right to terminate this Agreement until written notice setting forth the Event(s) of Default has been given to the Franchisee by the Franchisor and after receiving the written notice from the Franchisor, the Franchisee fails to correct or cure the Event(s) of Default within the time specified by applicable law.  If applicable law does not specify a time period to correct or sure the Event(s) of Default, then the Franchisee will have thirty (30) days after receipt of the written notice to cure or correct the Event(s) of Default, except where the written notice states that the Event(s) of Default relate to the delinquent payment of any fees or other monies payable to the Franchisor under this Agreement, in which case the Franchisee will have ten (10) days after receipt of the written notice to correct or cure the Event(s) of Default by making full payment (together with interest as provided for in this Agreement) to Franchisor.

74.     Uno sent Franchisee Notice of Default to this effect, on or about January 29, 2024.

75.     Pursuant to the express terms of the Agreement, the Notice of Default informed

Franchisee that he had ten (10) days to cure the defaults and to make complete and full payment

of all delinquent fees.

76.     Franchisee failed to do so within ten (10) days.

77.     Franchisee's time to cure expired on or about February 8, 2024.

*Notice of Default and Breach and Failure to Cure*

78.     Franchisee has not made any payment to Uno of any past due, delinquent or ongoing Royalty Fees or Co-Op Fees since Uno sent the Notice of Default.

79.     The amount of unpaid and delinquent past due royalty and Co-Op Fees which Franchisee owes Uno amount to more than eighty thousand dollars ($80,000).

80.     The Agreement provides that Uno was entitled to simple interest on any past due amounts owed by Franchisee paid after there were due to Uno.

81.     The Agreement states, in relevant part:

**4.3     PAYMENTS; INTEREST**
Any Payment not received by the Franchisor on or before the due date will be deemed past due.  All past due Payments of the Franchisee will bear simple interest from the due date until the Payment is received by the Franchisor at the frate of one and one-half percent (1 ½ %) per month on the unpaid balance, or the maximum rate allowed by applicable law, whichever is less.

82.     Franchisee accordingly owes Uno, in addition to the unpaid and delinquent past due Royalty and Co-Op Fees which Franchisee owes Uno, payment for interest charges at the rate of 1½ % per month on all payments due Uno.

83.     Franchisee also owes Uno its costs and attorneys' fees as a result of its breach.

84.     The Agreement states, in relevant part:

**19.7     DAMAGES; ATTORNEYS' FEES**
The Franchisee and the Principals will pay to the Franchisor all damages (including all Royalty Fees and other amounts that would have been payable by the Franchisee to the Franchisor over the remainder of the Term) incurred by the Franchisor as a result of any breach of this Agreement by the Franchisee, as well as all costs and expenses, including interest and reasonable attorneys' fees, incurred by the Franchisor in connection with obtaining any remedy available to the Franchisor for any violation of this Agreement and subsequent termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcements of any provisions of this Agreement.

85.    Because Franchisee has failed to cure the delinquent payment of any fees owed, and continues to fail to pay these amounts due and owing, by making full payment plus interest of the unpaid amounts, Uno is explicitly entitled to all damages incurred as a result of a breach, as well as all costs, expenses and attorneys' fees.

***Ted Politte's Fraud***

86.    Uno informed Franchisee of its intent to file this action and inquired if Politte would be interested in resolving these amounts owed rather than defend this lawsuit.

87.    Ted Politte, on behalf of himself and the Franchisee, expressed interest in discussing resolution of this matter without litigation.

88.    Ted Politte told Uno that he agreed that he would make payments towards the amount owed in exchange for an amendment to the Franchise Agreement.

89.    When Uno had not received the first payment from Franchisee, Uno contacted Ted Politte to ask whether payment had been made.

90.    Ted Politte represented to Fred Houston of Uno by text message on October 10, 2024, that he had indeed mailed the first payment to Uno.

91.    Ted Politte's representations to Uno that Franchisee would make payments to Uno toward the amounts owed in exchange for amending the Franchise Agreement were false.

92.    Ted Politte's representation that he had mailed the first payment to Uno was false.

93.    When Uno informed Ted Politte that the check had not been received, Ted Politte promised Fred Houston of Uno over the phone that he would cancel the check and send a new one to Uno's offices.

94.    Ted Politte never performed in accordance with his promise to cancel the check and issue a new one and send it to Uno's offices.

95.     When Uno followed up with Franchisee to inform him that the check had not been received, Ted Politte never responded to any of Uno's messages.

96.     Ted Politte's promise to pay Uno was knowingly false when made.

97.     Uno delayed the filing of this lawsuit in reliance on Ted Politte's representations that Franchisee would agree to amend the Franchise Agreement and that he would cause Franchisee to make payments toward the amounts owed.

98.     Uno's delay in filing this lawsuit in reliance on Ted Politte's representations was reasonable.

## COUNT I
## (BREACH OF CONTRACT—ALL DEFENDANTS)

99.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1 through 98 of the Complaint as if fully set forth herein.

100.    Plaintiff entered into a valid and binding Agreement with Defendants which included provisions that obligated Defendant to, among other things, pay Uno monthly Royalty Fees and Co-Op Fees, for the entire Term of the Agreement, late payment interest charges, and furthermore keep open a bank account for Uno to make ETF withdrawals for payment of such fees.

101.    The Agreement between Plaintiff and Defendants constituted valid, enforceable contract.

102.    Plaintiff performed its obligations under the Agreement.

103.    Defendants breached the Agreement by among other things failing to pay past, delinquent unpaid and ongoing monthly Royalty Fees and Co-Op Fees due under the Agreement

and closing the bank account Franchisee designated for Uno to make ETF withdrawals for payment of such fees, as more fully described above.

104.    In breaching the Agreement, Defendants were without justification or defense.

105.    As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to interest, expenses costs and attorneys' fees.

**<u>COUNT II</u>**
**(BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING—ALL DEFENDANTS)**

106.    Plaintiff re-alleges and incorporates by reference its allegations in Paragraphs 1 through 105 above as if fully set forth herein.

107.    Defendants entered into a valid and binding agreement with Plaintiff for Franchisee to operate the Denver Restaurant.

108.    The Agreement between Plaintiff and Defendants included provisions that obligated Defendant to, among other things, pay Uno monthly Royalty Fees and Co-Op Fees, for the entire Term of the Agreement, late payment interest charges, and furthermore keep open a bank account for Uno to make ETF withdrawals for payment of such fees.

109.    The Agreement between Plaintiff and Defendants constituted valid, enforceable contracts.

110.    Implied in the Agreement between Plaintiff and Defendants was a covenant that Defendant would act in good faith and would engage in fair dealings in performing the terms and conditions of the agreements.

111.    Under the terms of the Agreement, Defendants obligated Defendant to, among other things, pay Uno monthly Royalty Fees and Co-Op Fees, for the entire Term of the Agreement, late

payment interest charges, and furthermore keep open a bank account for Uno to make ETF withdrawals for payment of such fees.

112.    Plaintiff fulfilled all of its obligations to Defendants under the Agreement.

113.    Defendants breached the covenant of good faith and fair dealing implicit in the Agreement with Plaintiff by delinquent among other things failing to pay past, delinquent unpaid and ongoing monthly Royalty Fees and Co-Op Fees due under the Agreement and closing the bank account Franchisee designated for Uno to make ETF withdrawals for payment of such fees, as more fully described above.

114.    Through his acts, omissions, failures and/or errors, Defendants breached the implied covenant of good faith and fair dealing as more fully discussed above.

115.    As a result of Defendants' breach and wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to interest, expenses costs and attorneys' fees.

## COUNT III
### (CONVERSION—ALL DEFENDANTS)

116.    Plaintiff re-alleges and incorporates by reference its allegations in Paragraphs 1 through 115 above as if fully set forth herein.

117.    Defendants wrongfully exercised dominion and control over Royalty Fees, Co-Op Fees and amounts owed to Uno under the Agreement.

118.    At all times, such Royalty Fees, Co-Op Fees and other amounts to which Uno was entitled under the Agreement were the sole property of Uno was they became due and owing to Uno under the Agreement.

119.    Defendants knew that such Royalty Fees, Co-Op Fees and other amounts to which Uno was entitled under the Agreement were the sole property of Uno was they became due and owing to Uno under the Agreement.

120.    At no time did Defendants have the right of ownership of the Royalty Fees, Co-Op Fees and other amounts to which Uno was entitled under the Agreement, and any right of possession they had ended with once they became due and owing to Uno under the Agreement, without proper basis for justification for withholding those amounts under the Agreement.

121.    Uno has a right to immediate possession of its property, including the Royalty Fees, Co-Op Fees and other amounts to which Uno was entitled under the Agreement, which Defendants have wrongfully taken, withheld and deprived Uno was deprived of its ability to retrieve in violation of the Agreement and in violation of Franchisee's express promise to pay certain of this amounts under a payment plan.

122.    Instead of returning its property to Uno or paying Uno the Royalty Fees, Co-Op Fees and other amounts owed under the Agreement, Defendants has wrongfully withheld these amounts due and owing to Uno and deprived Uno was deprived of its ability to retrieve in violation of the Agreement and in violation of Franchisee's express promise to pay certain of this amounts under a payment plan, as more fully described above.

123.    Defendants' refusal constitutes an improper and wrongful assertion of dominion and control over Uno's property.

124.    As a direct and proximate cause of Defendants' exercise of dominion and control, Uno has suffered damages, including but not limited to compensatory damages, consequential damages, equitable damages, interests, reasonable costs and attorneys' fees.

## COUNT IV
### (FRAUD—DEFENDANT TED POLITTE)

125.    Plaintiff re-alleges and incorporates by reference its allegations in Paragraphs 1 through 124 above as if fully set forth herein.

126.    Ted Politte's representations as alleged above were false when made.

127.    Uno reasonably relied upon such false representations. Among other things, Uno delayed the filing of this lawsuit in reliance upon Ted Politte's false representations.

128.    Uno has been harmed by Ted Politte's false representations by, among other things, the delay costs arising from the delay in filing of this action and any loss in the form of unpaid amounts owed resulting therefrom, the time value of such amounts owed, and any prejudice that may arise on account of having delayed filing this action.

WHEREFORE, Plaintiff requests that this Court:

A.    Enter judgment in favor of Plaintiff;

B.    Award Plaintiff damages as determined at trial;

C.    Award Plaintiff interest, costs, and attorneys' fees as allowed by law; and

D.    Order such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues and claims so triable.

Dated: November 22, 2024

Respectfully submitted,

PIZZERIA UNO CORPORATION

By its attorneys,

VROUNTAS, AYER & CHANDLER, P.C.

*/s/ Christopher T. Vrountas*
Christopher T. Vrountas, Esq. (BBO 556993)
250 Commercial Street Suite 4004
Manchester, NH 03101
Telephone: 603-782-8444
Fax: 603-518-7617
cvrountas@vaclegal.com